Next case called for oral arguments is, I know I'm going to get this wrong, Noob Enterprises, Inc. versus the City of Carbondale. How do you pronounce it? How do you pronounce it? Noob. You got it right. I got it right. Lost that one. How can we pronounce it? Noob. That's all right. Let's go. Okay. Good morning, Your Honor. This case, I'm not sure it's going to be difficult if we just simply read the statute. What this is about, we don't deny any of the facts that are in. Apparently all the facts are in agreement with one exception. I do know that the appellee stated in their facts that they did not receive notice of the appeal in question until July 2nd. However, the record indicates differently because there is a file stamped, copy of the appeal with the mayor's office stamp on it on June 30th, which was the day the license was set to expire in this case. So they did have notice of this by June 30th. Other than that, all the other facts, there's no facts really in dispute here. And what this involves, Your Honor, is simply applying the state liquor statute to the appeals process at the state level. These were two different licenses, right? The one that you're talking about was suspended was, yes, it was a different license at a different location. The license that was in suspension was at Callahan's, New Enterprise of DBA, Callahan's. And what's on appeal here is New Enterprise of DBA, Stitt's. So it was the same, was it the same license holder, individual or corporate, but two different licenses? They were both corporate license under the same corporation. Right. But they were actually separate and distinct license. Both the local license was separate and distinct, and the state license that accompanied these to allow for each one, they were separate state licenses as well for each location. Basically, the statute states, and I gave them quite a history of this statute in the brief, that in any case where a licensee appeals to the state commission from an order or action of the local liquor control commission, having the effect of suspending or revoking a license, denying a renewal application, or refusing to grant a license, the licensee shall resume the operation of the license, pending decision of the state commission. So there's four instances where this stay comes into effect. If you revoke a license, suspend a license, fail to renew a license, or fail to grant a license, you get the protection of the statute in those four instances. Now, that's in paragraph two. Paragraph three goes on, and that was part of the amendments to state in any case in which a licensee appeals to the state commission, a suspension or revocation by a local liquor control commission, that it's the second or subsequent such suspension or revocation placed on that licensee within the preceding 12 months of the licensee shall consider the suspension or revocation to be in effect. So you have four instances where the state protects you, but in two of those instances, if you have a prior suspension, then there is a bar to the state. And that is what we're stating here is, and I think there may be a gray area with the two criteria, but there appears to be two things that have to be met before this bar to the state applies. One is it has to be an appeal of a suspension or revocation, and two, you have to have a prior suspension or revocation within the last 12 months. So in this case, what was being appealed was not a suspension or revocation. It was a failure to renew. And it is one of the two criteria that was added by the legislature in the last amendments in order to provide protection against the very thing that Carbondale has attempted to do. The city of Wyoming, Illinois, tried this back in the 80s, and this is what caused the Wyoming decision that I cited in my brief to occur, where they said that basically sitting on a license application was the same thing as revoking it. They interpreted it to be the same. When the legislature fixed that problem, that loophole that they had, they had to undo that decision because they're not the same thing. So they added those two extra criteria, denying a renewal application or refusing to grant in the paragraph two. But they very visibly did not add those two to the next paragraph, which makes perfectly good sense because anybody in the city could say, we don't like you, so we're just going to sit on your application. This is what they did. But you have to have distinct charges against somebody to revoke or suspend a license. This doesn't happen in a vacuum. Somebody has to do something. In this case, they had nothing. They just took the city off, and they didn't want to give them another license. So this is exactly what the Wyoming decision was designed to prevent. This is exactly why the legislature went back and amended this statute to provide these protections but at the same time undo the way the Wyoming court did it. So the Wyoming is not controlling the law anymore, but the statute is because they changed it to fix the problems addressed by the Wyoming court. So it's, I think Theopoly was arguing that Wyoming should be controlling. It is not. It's been overturned by the legislative changes. The one gray area that may exist, and I will say, if this court finds that it is a requirement, if you're being appealed for suspension of revocation, then the court probably doesn't need to go beyond that point because if both criteria are necessary, the first one has clearly not been met. But if the court goes beyond that to try to fix this gray area, there is a question as to whether or not this second criteria, that there be a suspension, applies toward a specific license or a licensee. And that is due to the wording in paragraph 3, which it states that if the licensee appeals and the licensee has had a suspension of revocation, that they will consider that to be in effect and shall cease all activity otherwise authorized by the license. When it says the license, it's specifying a single license. So I would submit to the court that what they're talking about is you have to appeal a suspension of revocation of that one license. So the argument that I used in the trial court, or the example that I used, had to do with Applebee's. Let's say that Applebee's has 100 locations in the state of Illinois, and it's all under one corporation and they all have a liquor license. Does that mean that Carbondale can refuse to grant Applebee's and Carbondale or revoke their license because they have a problem with an establishment in Chicago? Under the theory they're going by, they can do that. So that really doesn't make a lot of sense because each one of these licenses are issued separately. They have separate managers. They have separate personnel. So the fact that it's held under one corporate umbrella should not matter. The FD also argues in their brief that we're taking the position that if a licensee had had six prior suspensions, that we're saying that the state would be in effect with them if they're not appealing a suspension. And they're correct. That is exactly what we're arguing. I doubt that any jurisdiction is going to allow someone six suspensions in a year. They're going to revoke that license. At some point in time, if they've done enough to be suspended, if they're suspended two, three times, they're going to revoke it, and then there's no license to renew it. So, yes, if they keep suspending someone but don't take the action and they keep letting them have the license back after the suspension, according to the way the statute's written, they have that protection. If they simply sit on the license and say, we're not going to act on a renewal. If there are that series of things that are going on, they can revoke that license. In this particular case, there was never any suspension or revocation of the license of Styx. I think there had only been one violation in the last two years. So they took the action against Styx solely because of what occurred at another location. Now, I noticed one of the things that the city has done in their brief is raise the issue of immunity. We would take the position that immunity cannot be raised at this level. It was never raised with the trial court. There was no affirmative defense ever filed. They've even made statements in the brief that we don't know are true. They're not in the record. To say that the police officers did not know that there was a statute protecting this statute, they didn't believe that because that's going to open them up to discovery. It's going to open them up to depositions. And I don't believe, even if the police officers did not know, if they were instructed by the mayor, who is the liquor commissioner, they'll shut that bar down. The mayor's charged with knowing those statutes and enforcing them. So if the police are given an order by higher authority to go do something, the fact that the police officer may be ignorant of the law doesn't mean the city is blanket immunity because if they were given orders by someone who knew better, which the mayor did know better, then the city's not going to have immunity. So for them to be raising this issue for the first time on appeal when, in fact, they took exactly the opposite position with the trial court and told the trial court flat out that if this state was in effect, we'd probably have a suit for damages. And that's in the transcript. So when they come to this court, they completely reverse gears and bring up a defense that's never been raised. They don't want to get into discovery of this matter because there's a long history between this mayor and this particular last name. And that's what was really going on behind the scenes here. The question of whether or not the police officers knew is kind of an interesting question in and of itself because these licenses expired on the 30th of June. According to their factual statements in their brief, the police continued to allow this place to operate on July 1st. They didn't walk in until, like, 1230 in the morning on July 2nd. So if they truly believed this place was illegally operating, why didn't they shut it down at 6 o'clock on July 1st? We believe somebody ordered them to go close this bar. And we're more than willing, if this court were to reverse and send it back to the trial court and reinstate this case, if they wished to raise that defense and ask the court to amend their answer, then I would say I'm not going to object at the trial court level, but it would be interesting because then they're going to have to be subject to questioning and depositions. And that's what we, as much as anything, want to know here. They are trying to act as though this bar was shut down for an hour and a half and therefore there's really no damages here. When you walk into an establishment at the peak hour, when the place is the most crowded, especially if you're dealing with a bunch of college students and young people, and the police start shutting the place down, it has a long-term adverse effect. We deserve our day's court to prove that to the trial court as to what those damages were because their business drops substantially after this event. But then to make it worse, after the trial court ruled and said the state was not in effect, they turned around that day and shut it down again. Now they're saying that they were following the court order, but the court never ordered them to close the bar. The court merely ruled on the state. So it was still their decision as to whether they should follow the state statute and allow the place to continue to operate. So they made the decision to close this establishment a second time. They were not ordered by the court to do that. So in the end, we believe it's simply a plain reading of this statute in this third paragraph that clearly states that you have to be appealing suspension or revocation against the controlling criteria. There is no such appeal on file as a result of whether the state is going to apply and this establishment should have been allowed to remain open. And the city was well aware of this when they shut it down. Thank you. Thank you, Counselor. Counselor? Mr. Gordon. My name is Mike Kimmel. I'm the City Attorney for the City of Carbondale. As Mr. Sanders says, we're here primarily for one issue, which is what a statute says. And I kind of like this opening, which is all you've got to do is read the statute. Actually, that's what I said in my brief. The State Supreme Court has said the first thing we ought to do is read the statute, and if the statute says something, we ought to follow that. This statute that we're talking about appeals from order of local commission, involves appealing an action by a local liquor commission to the state liquor commission and ramifications of that appeal. The statute does have, we keep talking about two paragraphs, and actually, Newt's primary argument is that the second paragraph, which establishes a stay against the city or municipality from closing somewhat, is different from the next paragraph, which says, well, we'll allow this stay against the city in certain circumstances, but if other circumstances are there, we're not. You can go ahead and act at whatever action is appropriate. Counsel doesn't do a couple of things. One is, if you accept his argument, and his argument is that because the second paragraph actually has four things, including denial of renewal application, that if a liquor establishment, and I'll give you an example, we have lots of students, we've got lots of 18-year-olds, and I know it surprises everybody in this courtroom, but 18-year-olds like to drink, or would like to try to, and, you know, they take an opportunity. If a month before their license expired, a liquor establishment basically put a couple of notices up around the city, we're going to allow any 18-year-old that comes in here to drink. I guarantee you, your honors, they'll have a lot of business for a month. They get suspended. They come in, they don't get renewed. There's nothing we can do about it, under his argument, for four months, three months at least, because it's a denial of a renewal, and he says that there is no stopping that at all, under any circumstance. In other words, if it's a denial of a renewal, there's nothing we can do. That just doesn't make sense. That isn't what the statute says. And if you look at the first paragraph of the statute, it becomes even more clear, because the first paragraph of the statute is the one that gives him the right to appeal, and he talked about the difference between four elements in the second statute and only two, revocation or suspension, in the third paragraph. Well, the problem is that there's only two in the first paragraph also, which gives you the right to appeal. It doesn't talk about anything except revocation or suspension. It doesn't talk about failure to renew. Now, I am not contesting that he had a right to appeal or failure to renew, and, in fact, the Wyoming case specifically says he has a right to do that. That guiding to the, if you will, appellate issue for the state liquor bill, it doesn't change that there are four in the first either. So just as the policy would say, the legislature in nowhere said that if this person has been, this licensee has been suspended five times, ten times, whatever, that it won't have any impact if it's a failure to renew. They also said, basically, yes, you can appeal. So clearly the difference between the language is not in. If you read the third paragraph, it says, if a licensee has had within the preceding 12-month period a suspension, then there is no statute. Now, not only had this licensee had a suspension in the preceding 12-month period. What about the fact that it's a different license? There are the different licenses. They are two different separate licenses, but same licensee. If you read the statute, a couple of places it talks about the license in question, but in the limitation on the stay, the paragraph, it talks about licensee. If the legislature is going to say in one section, we're talking about the license affected, the licensed business being one specific, if they're trying to say location, I assume they would say that throughout. What they say is licensee. Now, clearly the plaintiff had the option to form different corporations and to operate five licensed places under five separate corporate entities, and if that was the case, we wouldn't be here today, but the plaintiff chose not to do that. He chose to operate basically as one business at two locations. Now, because we have location-specific licenses in Cardinal, we gave him two licenses, but he was one licensee, and that one suspension for that one licensee under this statute says that if he does not have it renewed, then basically he doesn't have a license. Now, the failure to renew was really also not our fault. If you look at the facts of this, there was a stay by the state because they were investigating. Now, counsel has taught some things that were not in the record, but one thing that clearly is in the record is that he conceded that. He said, I tried to have the city council do something, at least do a conditional license. Well, first of all, your honors, that's not even something that's contemplated in our ordinance. There is no such thing as a conditional license. And second of all, we were stopped, and he understood that. So we didn't take action then. We did not renew the license at the only meeting in July, I'm sorry, in June, that we had prior to the expiration. His license expired, and we felt under this statute that he no longer had a license. Now, he talks about, well, we don't want any problems. I mean, we don't want cities to overreach and to beat people up and all that. Well, actually, your honors, we went in on the police shift, told them that if they were operating, they were to be shut down because they did not have a license. They went in after midnight. He says lots of people. No, it's not in the record. He didn't talk about that, actually. There were only five people in there when he went in. They were shut down for an hour and a half. Then he went in and got a temporary restraining order, which he had an absolute right to attempt to do, which the court granted without hearing, without notice to me, which was fine. We then basically had a hearing. Now, he's talked about damages, and I'll skip to that and cover that right now. He talked about whether I conceded that there is obviously we're waiving our immunity. We don't have any immunity. I agree there are damages. The quote that he put in there about me was really in the preliminary injunction phase, there's a primal phase case for a preliminary injunction. One of the issues is that they have to prove that they're injured. I mean, if we don't have any injury, the court doesn't want to step in and stop something that's not going to hurt anybody. I said to the judge in that case, clearly if he's closed, that creates damage. That's what I was attempting to say. I said it in an article, and I'm sorry. It will probably be the first time I've ever done that. But anyway, I tried to say, and what I was saying was, in a preliminary injunction, we're not arguing that there is no damage here, which is an argument to try to prevent a preliminary injunction. What I said to the trial court and what I'm saying to this trial court is there is no basis for this preliminary injunction. There is no basis for this injunction, and that's exactly what the trial court did. The trial court did exactly what she was supposed to do. She read the statute. She read the first, second, and third paragraphs. She looked at them, and she said, third paragraph says, the city is not staying. It is not stopping from doing this. Therefore, I am not going to issue an injunction. And if there is no injunction, the city has a right to close the bar. And if they have that right, that ends this case. And, in fact, plaintiff concedes that. If we have the right, the city has the right to close the bar, there is no damage in this case. And, ultimately, that's what was done, that we had the right to close the bar because that bar did not have an active Carbondale local liquor license. The statute didn't say that we were staying from that because this licensee had had, at its establishment, a suspension within the preceding 30 days. This is a very simple case, I think. There are a lot of sub-issues, but the simple case is when the legislature basically has a statute and they say we're going to stop cities from doing certain things, but then in the next paragraph they say, but if the applicant, the license holder, does other things, he removes himself from that benefit, that's the law. The legislature did that. We followed that. We basically read the statute on its face, and we accepted that there was no stay. We also accepted that we don't want people selling liquor in our community without a license and proper supervision. We therefore closed the establishment. That's it. That's what we've got. I think that's all that's here, and we would ask that you affirm the trial court and determine that this statute does mean that if there has been a suspension of the licensee within the preceding 12 months, that licensee is not entitled to the benefits of the paragraph that says there is a stay. No more questions? I don't believe so. Thank you. Thank you. Counsel? Thank you, Your Honor. I'm not sure we're reading the same statute. Mr. Kimmel says that the second paragraph really only sets forth two scenarios where protection is afforded. As I'm reading it, it says, in any case where a licensee appeals to the State Commission from an order of action below the flip of the Commission having the effects of suspending or revoking a license, common, denying a renewal application, common, or refusing to grant a license, common. That's four scenarios. Those last two, denying a renewal application or refusing to grant a license, is what the legislature added to this statute when they amended it. And there is no corresponding language in the next paragraph. They left it the way it was, where the bar only applies to more serious circumstances where you've got a suspension or revocation. So how anybody can say there's only two criteria in that second paragraph is totally unlean. In addition, he says that their ordinances do not permit conditional license. There's been nothing in the briefs indicating that. But I think if you look at the transcripts and the stuff that was filed with the trial court, you'll find that Commissioner Jack, during this meeting, said we do this all the time. They simply issue a license conditional on certain things being met, and once those conditions are met, they give it to the city clerk, and they issue the license. So that's done quite commonly in Carbondale. So for them to say there's a hold, and quite honestly, there was a mistake as to what the state meant that we all were confused by, because it turns out the state did not have authority to tell Carbondale what they can and can't do as far as issuing a license. Carbondale can issue 100 local licenses if they want to. That doesn't mean anybody's got the right to sell alcohol until the state issues a corresponding license. So the state hold that was there was applying to the State Liquor Commission, not the locals. We all were under a different impression when we went in. But we informed them in that meeting that we were headed to Springfield the next morning to get that stay lifted. They were fully aware of what was going to happen. They could have held another meeting, and they specifically contacted the members of the commission, and I think in the record here is a copy from, I believe, Janet Voigt, who is the city clerk, indicating that all commission members have been asked whether they want to hold a meeting to approve this license, and they specifically said no. So they had ample opportunity to approve it that night, conditional on the hold being lifted. They had the opportunity to hold a special meeting just for that one purpose, to renew it, and they said no. Now, the idea that someone could go out and put up signs that says we're going to serve alcohol to 18-year-olds is kind of ludicrous, because I would guess that if they started doing that, the city would have more than enough to revoke the license right then and there. Probably the state, but somebody would be in jail for that one. But the truth is, if it was the first suspension, according to this statute, they would still have the protection of the state, because if it was the first time they were suspended, there wouldn't have been a prior suspension or revocation within the prior 12 months. So that may seem unfair to them, but that's what the law says. It has to be the second or subsequent. But, you know, we're talking about a bar here, an establishment that had no serious prior record of any type whatsoever. They just decided to shut them down. And, you know, the statute is something to uncover. The legislature was quite clear when they added certain protections in Paragraph 2 but refused to add that to Paragraph 3. That would remove those protections. It's quite clear what they were doing. Thank you. Thank you. Thank you, counsel. We appreciate the briefs and arguments. The counsel will take the case under advisement. The court will be in the short recess.